**RECORD NO. 14-1356**

𝕴𝖓 𝕿𝖍𝖊

# 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝕺𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘
## 𝕱𝖔𝖗 𝕿𝖍𝖊 𝕱𝖔𝖚𝖗𝖙𝖍 𝕮𝖎𝖗𝖈𝖚𝖎𝖙

**WILLIAM N. DEVLIN, and wife;**
**CARRI A. LUCKSAVAGE,**

*Plaintiffs - Appellants,*

**v.**

**WELLS FARGO BANK, N.A.,**

*Defendant - Appellee.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF NORTH CAROLINA
AT ASHEVILLE**

————————

## BRIEF OF APPELLEE

————————

Kenneth B. Oettinger, Jr.
B. Chad Ewing
Lee Davis Williams
WOMBLE CARLYLE SANDRIDGE
  & RICE, PLLC
301 South College Street
Suite 3500
Charlotte, NC  28202
(704) 331-4900

*Counsel for Appellee*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street  ♦  Suite 230  ♦  Richmond, VA  23219
804-249-7770  ♦  www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. 14-1356     Caption: William Devlin v. Wells Fargo Bank, N.A., et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Wells Fargo Bank, N.A.
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☑ YES ☐ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
    Wells Fargo & Company

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☑ YES ☐ NO
    If yes, identify all such owners:
    Wells Fargo & Company

10/28/2013 SCC                           - 1 -

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _4 · 23 · 2014_

Counsel for: Wells Fargo Bank, N.A.

## CERTIFICATE OF SERVICE
*****************************

I certify that on ____4/23/14____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

David R. Payne, Esq.
dpayne@drplawfirm.com

_____          _4-23-2014_
     (signature)                        (date)

- 2 -

# TABLE OF CONTENTS

**PAGE:**

TABLE OF AUTHORITIES ........................................................................iv

STATEMENT OF JURISDICTION........................................................1

STATEMENT OF THE ISSUES...............................................................1

STATEMENT OF THE CASE....................................................................2

    I.     Borrowers' Factual Allegations ...........................................2

    II.    Procedural History.................................................................5

SUMMARY OF THE ARGUMENT ...........................................................6

ARGUMENT ...............................................................................................10

STANDARD OF REVIEW .........................................................................10

    I.     The Standard of Appellate Review is De Novo...................10

    II.    Twombly/Iqbal is Standard for Testing Pleadings Under Rule 12(b)(6)...............................................................................10

DISCUSSION OF THE ISSUES..................................................................13

    I.     The District Court Properly Determined that Borrowers' Claims Are Barred by the Applicable Statutes of Limitations........................13

          A.    Borrowers Are Charged with Knowledge of Alleged Misrepresentations of which they Remained Willfully Blind...............................................................................15

          B.    Borrowers are Charged with Knowledge of the Contents of Documents that they Signed in Blank ..................16

          C.    The District Court Properly Concluded the Statutes of Limitations Began Running When the Loans Closed in 2004...............................................................................18

II.    The District Court Properly Determined that, Alternatively, Borrowers' Claims are Subject to Dismissal on the Merits Because they Fail to Sate Any Claim for Relief as a Matter of Law ......................................................................................19

    A.    The Onus was on Borrowers to Exercise Due Diligence in Evaluating the Financial Propriety of their Loan and, absent a Special Relationship, They Could Not Shift that Duty to Wells Fargo.................................................................19

        1.    The Parties Lender-Mortgagor Relationship Did Not Impose Upon Wells Fargo any Duty to Evaluate the Suitability of the Loans for Borrowers. ....................................................................20

        2.    The Implied Duty of Good Faith and Fair Dealing Did Not Impose Upon Wells Fargo a Duty to Evaluate the Suitability of the Loans for Borrowers. ....................................................................22

    B.    Borrowers Fail to Allege Facts Sufficient to State Claims for Fraud or Unfair Trade Practices..........................................24

        1    The Amended Complaint Fails to Satisfy the Particularity Required Under Rule 9(b). ........................26

        2    The Amended Complaint Fails to Allege Any Misrepresentation Made to Borrowers by Wells Fargo ............................................................................27

            i.    Borrowers' Failed to Plead Facts from which the Court Can Infer that Prosperity is Wells Fargo's Agent.............................................28

            ii.    The Statements Allegedly Made by Wells Fargo are Not Misrepresentations .......................30

            iii.    Borrowers' could not reasonably rely on the alleged misrepresentations. ...................................30

            iv.    Borrowers Admit their Alleged Harm was Caused by the Economic Downturn....................33

CONCLUSION .......................................................................................33

REQUEST TO DISPENSE WITH ORAL ARGUMENT .....................................33

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# <u>TABLE OF AUTHORITIES</u>

**PAGE(S):**

## <u>CASES</u>:

*Ada Liss Group v. Sara Lee Corp.*,
　　2010 WL 3910433 (M.D.N.C. April 27, 2010)...........................................24

*Ahmed v. Porter*,
　　No. 1:09-cv-101, 2009 WL 2581615 (W.D.N.C. June 23, 2009)................25

*Anand v. Ocwen Loan Servicing, LLC*,
　　13-1900, 2014 WL 2535405 (4th Cir. June 6, 2014) ...................................11

*Angell v. Kelly,*
　　336 F. Supp. 2d 540 (M.D.N.C. 2004)..........................................................21

*Ashcroft v. Iqbal*,
　　129 S. Ct. 1937 (2009)............................................................................11, 13

*Aziz v. Alcolac, Inc.*,
　　658 F.3d 388 (4th Cir. 2011) ...................................................................2, 12

*Bass v. E.I. DuPont de Nemours & Co.*,
　　324 F.3d 761 (4th Cir.2003) .........................................................................10

*Bauer v. Douglas Aquatics, Inc.*,
　　207 N.C. App. 65, 698 S.E.2d 757 (2010) ...................................................28

*Bell Atl. Corp. v. Twombly*,
　　550 U.S. 544 (2007)........................................................................11, 12, 13

*Branch Banking & Trust Co. v. Thompson*,
　　107 N.C. App. 53, 418 S.E.2d 694 (1992) ...................................................21

*Breece v. Oil Co.*,
　　211 N.C. 211, 189 S.E. 498 (1937) .............................................................16

iv

*Camp v. Leonard*,
    133 N.C. App. 554, 515 S.E.2d 909 (1999) ...................................................21

*Carpenter v. Merrill Lynch Realty Operating Partnership, L.P.*,
    108 N.C. App. 555, 424 S.E.2d 178 (N.C. App. 1993)................................30

*Castillo v. Emergency Med. Assocs., P.A.*,
    372 F.3d 643 (4th Cir. 2004) ........................................................................13

*Coley v. N. Carolina Nat. Bank*,
    41 N.C. App. 121, 254 S.E.2d 217 (1979) ....................................................26

*Colt v. Kimball*,
    190 N.C. 169, 129 S.E. 406 (1925) ..............................................................16

*CSX Transp., Inc. v. Gilkison*,
    406 F. App'x 723 (4th Cir. 2010)..................................................................14

*Dallaire v. Bank of America, N.A.*,
    738 S.E.2d 731 (N.C. Ct. App. 2012),
    rev. allowed, 747 S.E.2d 535 (N.C. 2013) ....................................................21

*Dalton v. Camp*,
    353 N.C. 647, 548 S.E.2d 704 (2001) ..........................................................21

*Dellinger v. Gillespie*,
    118 N.C. 737, 24 S.E. 538 (1896) ................................................................16

*Dixon v. Countrywide Home Loans, Inc.*,
    710 F. Supp. 2d 1325 (S.D. Fla. 2010)...................................................17, 18

*Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*,
    213 F.3d 175 (4th Cir.2000) .........................................................................10

*Edwards v. City of Goldsboro*,
    178 F.3d 231 (4th Cir. 1999) ........................................................................12

*Erie R. Co. v. Tompkins*,
    304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938) .................................10, 11

*Feibus & Co., Inc. v. Godley Construction Co.*,
    301 N.C. 294, 271 S.E.2d 385 (1980) ...........................................................16

*Food Lion, LLC v. Schuster Mktg. Corp.*,
    382 F. Supp. 2d 793 (E.D.N.C. 2005) ...........................................................27

*Francis v. Giacomelli*,
    588 F.3d 186 (4th Cir. 2009) ...........................................................12

*Furst v. Merritt*,
    190 N.C. 397, 130 S.E. 40 (1925) ...........................................................16

*Gant v. NCNB Nat'l Bank of N.C.*,
    94 N.C. App. 198, 379 S.E.2d 865,
    disc. rev. denied, 325 N.C. 706, 388 S.E.2d 453 (1989) ...........................22

*Giarratano v. Johnson*,
    521 F.3d 298 (4th Cir. 2008) ...........................................................10

*Griffin v. Lumber Co.*,
    140 N.C. 514, 53 S.E. 307 (1906) ...........................................................16

*Grubb Properties, Inc. v. Simms Investment Co.*,
    101 N.C. App. 498, 400 S.E.2d 85 (1991) ...................................................16

*Harrison v. Westinghouse Savannah River Co.*,
    176 F.3d 776 (4th Cir. 1999) ...........................................................25

*Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*,
    736 F.3d 255 (4th Cir.2013) ...........................................................11

*Hayrioglu v. Granite Capital Funding, LLC*,
    794 F. Supp. 2d 405 (E.D.N.Y. 2011) ...........................................................32

*In re Baby Boy Shamp*,
    82 N.C. App. 606, 347 S.E.2d 848 (1986) ...................................................25

*Infante v. Bank of Amer. Corp.*,
    680 F.Supp.2d 1298 (S.D.Fla.2009) ...........................................................17

*Karamath v. U.S. Bank, N.A.*,
  2012 U.S. Dist. LEXIS 135038 (E.D.N.Y. Aug. 29, 2012) ..........................28

*Karamath v. United States Bank*,
  No. 11-CV1557 (NGG)(RML),
  2012 WL 4327613 (E.D.N.Y. Aug. 29, 2012) .............................................31

*Lassiter v. Bank of North Carolina*,
  146 N.C. App. 264, 551 S.E.2d 920 (2001) ................................................21

*Liner v. DiCresce*,
  905 F. Supp. 280 (M.D.N.C. 1994) .............................................................25

*Martinez v. Res. Bank, FSB*,
  1:09CV1112 (JCC),
  2009 WL 4665767 (E.D. Va. Nov. 30, 2009) ..............................................17

*Matthys v. Mortgage Elec. Registration Sys., Inc.*,
  609-CV1150-ORL-31DAB,
  2009 WL 3762632 (M.D. Fla. Nov. 10, 2009).............................................18

*McNair v. Lend Lease Trucks, Inc.*,
  95 F.3d 325 (4th Cir. 1996) ........................................................................11

*Meineke Car Care Centers, Inc. v. RLB Holdings, Inc.*,
  2009 WL 2461953 (W.D.N.C. Aug. 10, 2009)............................................23

*Meisel v. Grunberg*,
  651 F. Supp. 2d 98 (S.D.N.Y. 2009) ...........................................................28

*Metro Group, Inc. v. Meridian Indus.*,
  No. 3:09-CV-440,
  2010 WL 5056771 (W.D.N.C. Dec. 6, 2010)...............................................27

*Newsom v. Countrywide Home Loans, Inc.*,
  714 F. Supp. 2d 1000 (N.D. Cal. 2010)........................................................32

*Nixon v. Alan Vester Auto Group, Inc.*,
  No. 1:07-cv-839,
  2008 U.S. Dist. LEXIS 79294 (M.D.N.C. Oct. 8, 2008) .............................20

*Oates v. JAG, Inc.*,
　　314 N.C. 276, 333 S.E.2d 222 (1985) ...........................................................13

*Oglesbee v. IndyMac Fin. Services, Inc.*,
　　686 F. Supp. 2d 1313 (S.D. Fla. 2010)........................................................32

*Peacock v. Barnes*,
　　142 N.C. 215, 55 S.E. 99 (1906) ...................................................15

*Polygenex Int'l, Inc. v. Polyzen, Inc.*,
　　133 N.C. App. 245, 515 S.E.2d 457 (1999) ..................................................23

*Republican Party v. Martin*,
　　980 F.2d 943 (4th Cir. 1992) .......................................................12

*Richardson v. Bank of America, N.A.*,
　　182 N.C. App. 531, 643 S.E.2d 410 (2007) ..................................................24

*Riley v. Murdock*,
　　828 F. Supp. 1215 (E.D.N.C. 1993) ............................................................25

*Robinson v. Deutsche Bank Nat'l Trust Co.*,
　　No. 5:12-CV-590-F,
　　2013 WL 1452933 (E.D.N.C. April 9, 2013)...............................................24

*Shalford v. Shelley's Jewelry, Inc.*,
　　127 F. Supp. 2d 779 (W.D.N.C. 2000).........................................................23

*State Farm Fire & Cas. Co. v. Darsie*,
　　161 N.C. App. 542, 589 S.E.2d 391 (2003) ..................................................15

*Sullivan v. Mebane Packaging Group, Inc.*,
　　158 N.C. App. 19, 581 S.E.2d 452 (2003) ..............................................30, 31

*Suntrust Mortg., Inc. v. Busby*,
　　651 F. Supp. 2d 472 (W.D.N.C. 2009)...................................................23-24

*Walters v. McMahen*,
　　684 F.3d 435 (4th Cir. 2012) .........................................................2, 11, 12

*Wells Fargo v. VanDorn*,
    2012 NCBC 6 (N.C. Super. Ct. 2012) ..........................................................20

*Weyerhaeuser Co. v. Godwin Bldg. Supply Co., Inc.*,
    40 N.C. App. 743, 253 S.E.2d 625 (1979) ....................................................24

*Williams v. Williams*,
    220 N.C. 806, 18 S.E.2d 364 (1942) ....................................................16, 18

*Wysong & Miles Co. v. Emp'rs of Wausau*,
    4 F. Supp. 2d 421,
    Case 1:12-cv-00388-MR (M.D.N.C. 1998)............................................ 15-16

*Zimmerman v. Logemann*,
    No. 09-CV-210,
    2011 WL 1674956  (W.D. Wis. Mar. 17, 2011) ...........................................32

## **STATUTES:**

28 U.S.C. § 1291 ......................................................................................................1

28 U.S.C. § 1332 ......................................................................................................1

N.C. Gen. Stat. § 1-52 ............................................................................................13

N.C. Gen. Stat. § 75-1.1, et seq...............................................................................5

N.C. Gen. Stat. § 75-16.2 ......................................................................................13

## **RULES:**

Fed. R. Civ. P. 9 .....................................................................................................2

Fed. R. Civ. P. 9(b) ....................................................................................25, 26, 27

Fed. R. Civ. P. 12(b)(6).................................................................................*passim*

## STATEMENT OF JURISDICTION

Plaintiffs-Appellants William N. Devlin and Carri A. Lucksavage (the "Borrowers" or "Appellants") are citizens of Buncombe County, North Carolina. (JA p. 14; Cmplt ¶ 1). Defendant-Appellee Wells Fargo Bank, N.A. ("Wells Fargo" or the "Bank") is a national bank with its principal office in Sioux Fall, South Dakota. (JA p. 6; Notice of Removal ¶ 7). The amount in controversy in this action, exclusive of interest and costs, exceeds $75,000. Accordingly, this case was properly before the United States District Court for the Western District of North Carolina (the "District Court") pursuant to 28 U.S.C. § 1332. (JA pp. 6-7; Notice of Removal ¶¶ 8-10).

On March 21, 2014, the District Court dismissed with prejudice all claims in Borrowers' Amended Complaint. (JA pp. 185-215; Order Granting Mtn. to Dismiss pp. 1-31). Borrowers filed a Notice of Appeal on April 8, 2014, appealing from a final decision of the District Court disposing of all of their claims. (JA pp. 216-219; Judgment, Notice of Appeal). Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.    Did the District Court properly conclude that Borrowers' claims were barred by the applicable statutes of limitations?

2.    Did the District Court properly grant Wells Fargo's Motion to Dismiss because Wells Fargo did not have any duty to evaluate whether Borrowers' could afford the Loans?

3.    Did the District Court properly grant Wells Fargo's Motion to Dismiss because the Amended Complaint failed to satisfy Rule 9 of the Federal Rules of Civil Procedure and failed to allege any actionable misrepresentation or reasonable reliance by Borrowers?

4.    Did the District Court properly grant Wells Fargo's Motion to Dismiss by applying the federal plausibility standard for evaluating the sufficiency of a complaint on a motion to dismiss?

## **STATEMENT OF THE CASE**[1]

### I.    **Borrowers' Factual Allegations**

Borrowers brought this civil action in relation to their purchase of Lots 3 and 31 Cotswolds Court, Arden, North Carolina 28704 in Buncombe County, North Carolina (the "Property"). (JA p. 14; Cmplt ¶¶ 3-4). In 2004, Borrowers sought the help of mortgage broker JV WFHM Prosperity Mortgage ("Prosperity") as they desired to buy the Property. (JA p. 14; Cmplt ¶¶ 3-5).

---

[1] Wells Fargo has adopted the factual recitation of the District Court, which disregarded all "bare legal conclusions" asserted in the Amended Complaint in accordance with *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) and *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). (JA pp. 189-192; Order Granting Mtn. to Dismiss pp. 5-8).

Borrowers provided necessary documentation to Prosperity, and Prosperity's agent asked Borrowers to sign documents in blank to be later filled out by Prosperity's agent and then submitted to Wells Fargo. (JA pp. 14-15; Cmplt ¶¶ 7-8). Borrowers complied with Prosperity's requests and applied for a $409,600 loan in addition to a $99,800 equity loan on the Property. (JA p. 15; Cmplt ¶ 9). Borrowers claim that they were "assured by both Prosperity and Wells Fargo Bank that said loans complied with all federal codes and regulations and that their loan was in fact 'an acceptable and good loan' for purposes of the transaction therein." (JA p. 15; Cmplt ¶ 10).

On November 29, 2004, Borrowers executed documentation to close on the Property. (JA p. 15; Cmplt ¶¶ 8. 11). The information in the loan closing documentation was based upon the documents that Borrowers had provided to Prosperity's agent and the loan applications that Borrowers had signed in blank and given to Prosperity's agent to complete and then give to Wells Fargo. (JA p. 15; Cmplt ¶¶ 8, 11).

Borrowers made timely loan payments to Wells Fargo until "the real estate collapse and the economic collapse which began in 2007," (JA p. 15; Cmplt ¶ 12). Borrowers tried to obtain a loan modification from Wells Fargo but were unsuccessful in doing so. (JA p. 15; Cmplt ¶ 13). During their attempted modification process, however, Borrowers discovered that Prosperity's agent

"fraudulently and illegally filled out various loan application documents as well as other federally mandated documents with false information related to the . . . income of the Plaintiffs." (JA p. 15; Cmplt ¶ 14). Particularly, the income of the Plaintiff Lucksavage "was amplified three times its original amount" and the income of the Plaintiff Devlin was falsely represented since he was self-employed but the agents indicated that he had received W-2 income as well as other income "which was simply and totally false in nature." (JA p. 15; Cmplt ¶ 14).

Further, in their Amended Complaint, Borrowers note that Wells Fargo has commenced foreclosure proceedings against them regarding the Property in Buncombe County, North Carolina state court. (JA p. 85; Amdt to Cmplt ¶ 31). Borrowers further alleged that Wells Fargo "has agreed and consented to undergo a number of steps designed to remedy the deficiencies and unsafe or unsound business practices identified by federal regulatory officials with respect to [Wells Fargo's] residential mortgage servicing and foreclosure processes" through a federal Consent Cease and Desist Order ("National Mortgage Settlement"). (JA p. 85; Amdt to Cmplt ¶ 31). Borrowers claim that Wells Fargo violated the terms of the National Mortgage settlement by continuing to attempt to foreclose on Borrowers' property after they gave notice to the servicer "that application for immediate assistance by way of the . . . national mortgage settlement was underway." (JA p. 85; Amdt to Cmplt ¶ 30).

## II.    Procedural History

Borrowers filed suit against Wells Fargo, asserting claims for breach of duty of good faith and fair dealing; fraud; violations of the North Carolina Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, et seq. ("Chapter 75"); and injunctive relief, all arising from Wells Fargo's alleged involvement in fraudulently inflating Borrowers' incomes on their loan applications in order to provide loans to Borrowers for which they did not qualify. (See, generally, JA pp. 14-18, 84-87; Cmplt and Amdt to Cmplt).

Borrowers originally filed this action in the Buncombe County North Carolina General Court of Justice, Superior Court Division, on November 2, 2012. (JA p. 15; Cmplt ¶ 14). On November 6, 2012, Wells Fargo properly removed this action to the District Court. (JA p. 5; Ntc. of Removal p. 1). After Wells Fargo moved to dismiss Borrowers' Complaint on January 3, 2013 (JA p. 37; Mtn. to Dismiss p. 1), Borrowers brought a motion to amend their Complaint. (JA p. 52; Mtn. to Amend p. 1). After Borrowers filed their Amendment to Complaint on August 19, 2013 (JA p. 84; Amdt to Cmplt p. 1), Wells Fargo renewed its motion to dismiss pursuant to Rule 9 and Rule 12(b)(6) of the Federal Rules of Civil Procedure. (JA p. 88; Mtn. to Dismiss Amd Cmplt p. 1). On March 21, 2014, the District Court dismissed with prejudice all claims in Borrowers' Amended Complaint. (JA pp. 185-215; Order Granting Mtn. to Dismiss pp. 1-31).

Borrowers filed a Notice of Appeal on April 8, 2014, appealing from a final decision of the District Court disposing of all of their claims. (JA pp. 216-219; Judgment, Notice of Appeal).

## SUMMARY OF THE ARGUMENT

In November 2004, Borrowers borrowed: (i) $409,600 from Wells Fargo to purchase the Property; and (ii) an additional $99,800 as a home equity loan secured by the same Property (collectively, the "Loans"). (JA p. 15; Cmplt ¶ 9).

Borrowers made their payments under the Loans until 2007, when they allege they defaulted because of the "real estate collapse and economic collapse which began in 2007." (JA p. 15; Cmplt ¶ 12). Despite admitting that general economic conditions caused them to default on their payment obligations, they seek damages from Wells Fargo for allegedly making loans to them for which they did not qualify. (See, generally, JA pp. 14-18; Cmplt). Borrowers also want to keep the Property they purchased with the money they borrowed from Wells Fargo and have not repaid. (JA pp. 17, 84-86; Cmplt ¶¶ 24-25; Amdt to Cmplt ¶¶ 27-35) (seeking to enjoin any foreclosure on the Property because Borrowers allege the Note and Deed of Trust were procured by fraud).

Borrowers do **not** contend Wells Fargo misrepresented **any** of the terms of either Loan. Instead Borrowers' claims rest on contentions that Wells Fargo

wrongfully relied on inflated income figures – that Prosperity placed in Borrowers' loan application – when agreeing to make the Loans.

Borrowers assert four claims: (i) Breach of the Duty of Good Faith and Fair Dealing, (ii) Fraud, (iii) Deceptive Trade Practices, and (iv) Injunctive Relief. The Amendment to Complaint adds a "Fifth Cause of Action: Injunctive Relief" seeking to enforce a consent judgment in a case in which they were not parties. (See, generally, JA pp. 14-18, 84-87; Cmplt and Amdt to Cmplt).

As detailed in this Response Brief the District Court's Order dismissing Borrowers' claims with prejudice should be affirmed because:

1. *The claims are barred by the applicable statutes of limitations.* Borrowers' claims are based upon alleged misrepresentations of their income placed in their loan application by Prosperity and the suitability of the loan given Borrowers' real income. All of the misrepresentations were allegedly made during the loan application process, and Borrowers had the capacity and opportunity to discover them by the time the Loans closed on November 29, 2004, had they exercised due diligence.

2. *The claims are premised on the breach of a legal duty that does not exist – to wit: that a bank has a duty to determine whether a loan is a good deal for its borrower.* Absent a fiduciary relationship, which did not exist between Wells Fargo and Borrowers, a mortgage loan transaction is an arms' length transaction,

and the lender owes no duty to the borrower to evaluate the propriety of the loan for the borrower's benefit.

Wells Fargo did not owe Borrowers a duty to protect them from making a bad investment. Borrowers decided to purchase the Property and determined that they could afford to repay the Loans under the specified terms. Borrowers received what they sought and, now that it has proven to be unaffordable years later as a result of an economic downturn, they want this Court to recognize a novel claim based on Wells Fargo's failure to deny their loan application. Borrowers were in the best position to ascertain their ability to afford the Property, and their attempt to hold Wells Fargo liable for their financial decision should be rejected.

3.      *Borrowers have failed to plead the alleged fraud and unfair or deceptive trade practices with the required particularity, to allege reasonable reliance, or even to allege a misstatement of past or present fact to support their claims.* Borrowers fail to allege any facts supporting their conclusions that Prosperity was Wells Fargo's agent such that the allegedly inflated income figures inserted into Borrowers' loan application by Prosperity could be imputed to Wells Fargo. The only representations Borrowers attribute to Wells Fargo relate to the opinion that the Loans were "acceptable and good," and such statements of opinion, future probability, outcome or consequence are not actionable at law.

Moreover, Borrowers cannot claim they reasonably relied on any misrepresentations of their income or whether they could afford the Loans with their income, because they could have discovered the information and evaluated the Loans for themselves in the exercise of due diligence.

Additionally, Borrowers have failed to allege Wells Fargo caused them any harm by making the Loans to them, and they affirmatively allege their inability to repay the loans was caused by the real estate and economic collapse that began in 2007.

Accordingly, Borrowers' failed to state a claim for fraud, and because Borrowers' Chapter 75 claim is based upon the alleged fraud, it also fails.

4.      *Plaintiffs have failed to identify a breach of any contract upon which to base their breach of the duty of good faith and fair dealing claim.* All of the conduct upon which Borrowers base their claims occurred before the formation of the loan contracts. Because conduct which occurred before the formation of a contract cannot support a claim for breach of the duty of good faith and fair dealing, Borrowers' have failed to state a claim under that theory.

5.      *Borrowers' Opening Brief does not address their claim for injunctive relief, so it appears to have been waived.* However, Wells Fargo notes that Borrowers have no standing to attempt to enforce the "National Mortgage Settlement" because they were not parties to the alleged agreement. Moreover, as

discussed throughout this Response Brief, Borrowers cannot show a likelihood of success on the merits of any of their claims.

Accordingly, the District Court's Order granting Wells Fargo's Motion to Dismiss should be affirmed, and this Appeal dismissed.

## ARGUMENT

## STANDARD OF REVIEW

### I.     The Standard of Appellate Review is De Novo

The standard of appellate review from an order granting a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) is de novo. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  In conducting this review, the Court "take[s] the facts in the light most favorable to the plaintiff," but "[] need not accept the legal conclusions drawn from the facts," and "[] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.* (*quoting, Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir.2000) and *citing, Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir.2003)).

### II.    *Twombly/Iqbal* is Standard for Testing Pleadings Under Rule 12(b)(6)

Borrowers contend the District Court erred in applying the federal plausibility standard for testing pleadings under Rule 12(b)(6), arguing that, under the *Erie* doctrine, a federal court sitting in diversity should instead apply the state "notice pleading" standard. (Appellants' Brief, pp. 10-24). However, it is well

established that **"[t]he sufficiency of the pleadings [] is a procedural matter to which federal law applies."** *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 328 (4th Cir. 1996). Under *Erie*, courts sitting in diversity apply state substantive law and federal procedural law, just as the District Court did in dismissing Borrowers' Amended Complaint. *See*, *Anand v. Ocwen Loan Servicing, LLC*, 13-1900, 2014 WL 2535405 (4th Cir. June 6, 2014) (*citing*, *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n. 3 (4th Cir.2013); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

Accordingly, in order to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As this Court has noted, *Twombly* and *Ashcroft* require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012).

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570). To be "plausible on its face," a complaint must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at

678. Determining whether a complaint states a plausible claim for relief is "a context-specific task," *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009), which requires the Court to assess whether the factual allegations of the complaint are sufficient "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555. As this Court has recently explained:

> To satisfy this standard, a plaintiff need not forecast evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements. Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is probable, the complaint must advance the plaintiff's claim across the line from conceivable to plausible.

*Walters*, 684 F.3d at 439 (citations and internal quotation marks omitted).

In reviewing a complaint, the Court must accept the truthfulness of all factual allegations but is not required to assume the truth of "bare legal conclusions." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters*, 684 F.3d at 439. Notably, a Rule 12(b)(6) motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (*quoting Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

The *Twombly/Iqbal* standard is appropriate here, and under that standard, as fully discussed in the District Court's Order, Borrowers' Amended Complaint[2] fails to state a claim as a matter of law.[3]

## DISCUSSION OF THE ISSUES

### I.    The District Court Properly Determined that Borrowers' Claims Are Barred by the Applicable Statutes of Limitations.

As a threshold matter, the District Court dismissed all of Borrowers' claims because they are barred by the applicable statutes of limitations.[4]

Borrowers claim that the fraudulent misrepresentations giving rise to their claims are found in their loan application, as filled in by Prosperity's agent. (JA pp.

---

[2] Appellants amended their original Complaint after Wells Fargo filed its Motion to Dismiss the Complaint, but failed to correct any of the deficiencies (*See, generally*, JA pp. 14-18, 84-87; Cmplt and Amdt to Cmplt).

[3] Appellants' argument fails at a more fundamental level, however, such that they have failed to state any claim even under North Carolina's notice pleading standard. Dismissal under North Carolina's Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim. *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985). In fact, as described below, the Amended Complaint, on its face, failed to state any viable claims and the claims were barred by the applicable statutes of limitations.

[4] *See* N.C. Gen. Stat. § 1-52 (breach of contract and fraud– three years); N.C. Gen. Stat. § 75-16.2 (UDTPA – four years); *see also Castillo v. Emergency Med. Assocs., P.A.*, 372 F.3d 643, 646 (4th Cir. 2004) ("Federal courts sitting in diversity generally apply state statutes of limitations.").

13

14-15; Cmplt ¶¶ 7-8). They assert that they first learned of these misrepresentations when they attempted to get a loan modification sometime after 2007.[5] (JA p. 15; Cmplt ¶¶ 12-14). Borrowers initialed and signed their blank loan applications, however, on November 22, 2004, "assum[ing] this was acceptable in all respects." (JA p. 15; Cmplt ¶ 8).

The District Court aptly reasoned that, "in the exercise of due diligence, [Borrowers] could have examined their loan application and discovered that the representation of their income, which was made *on their behalf* and on which the loan had been approved, was inaccurate." (JA p. 197; Order Granting Mtn to Dismiss p. 13). Accordingly, the Court held that "it 'clearly appears' on the face of the Amended Complaint that Borrowers knew or should have known at the time of the closing in November 2004 of the alleged wrongful conduct." (JA pp. 197-198; Order Granting Mtn to Dismiss pp. 13-14) (*citing CSX Transp., Inc. v. Gilkison*, 406 F. App'x 723, 729 (4th Cir. 2010) (per curiam). (JA pp. 197-198; Order Granting Mtn to Dismiss pp. 13-14).

---

[5] In their original Complaint and in their Amended Complaint, the Appellants did not allege a particular date when they discovered the alleged fraudulent information on their loan applications. Rather, they alleged that they learned of such information during their attempted loan modification which was after they had stopped making payments on the loans sometime in 2007. (JA p. 15; Cmplt ¶¶ 12-14). In their Brief in Opposition to the Motion to Dismiss, the Appellants state for the first time that the "[f]alsified documents were discovered by Appellants in response to a Qualified Written Request submitted to Defendant on April 19, 2012." (JA p. 137; Brief in Opp. to Mtn to Dismiss n. 3).

Borrowers contend that "it seems harsh" to hold them responsible for discovering the allegedly false contents of their loan application because they signed the loan documents in blank and did not know what information was inserted subsequently by their mortgage broker. (Appellants' Brief, p. 30). They "urge this Court not to adopt any such duty for borrowers who are faced with these circumstances." (Appellants' Brief, p. 31). Instead, Borrowers contend they should have no duty to know the contents of the representations made to their lender on their behalf or any responsibility to determine for themselves what amount of mortgage payment they could afford with their income. (Appellants' Brief, p. 32-33). Borrowers' argument, however, is inconsistent with the law and common sense.

## A. Borrowers Are Charged with Knowledge of Alleged Misrepresentations of which they Remained Willfully Blind

As the District Court noted, since "[a] man should not be allowed to close his eyes to facts readily observable by ordinary attention, and maintain for his own advantage the position of carelessness, . . . [i]mputing discovery of a fraud or misrepresentation for the purposes of triggering the statute of limitations on the willfully blind is long standing in North Carolina." *State Farm Fire & Cas. Co. v. Darsie*, 161 N.C. App. 542, 547-48, 589 S.E.2d. 391, 397 (2003) (*quoting Peacock v. Barnes*, 142 N.C. 215, 218, 55 S.E. 99, 100 (1906)); *see also Wysong & Miles Co. v. Emp'rs of Wausau*, 4 F. Supp. 2d 421, 433, Case 1:12-cv-00388-MR

(M.D.N.C. 1998), (*citing Feibus & Co., Inc. v. Godley Construction Co.*, 301 N.C. 294, 304-05, 271 S.E.2d 385, 392 (1980) and *Grubb Properties, Inc. v. Simms Investment Co.*, 101 N.C. App. 498, 501, 400 S.E.2d 85, 88 (1991)) (noting that "[w]hether a plaintiff exercised due diligence in discovering fraud is usually a question of fact, but this question may be determined as a matter of law where the plaintiff clearly had both the capacity and opportunity to discover the fraud").[6]

**B.    Borrowers are Charged with Knowledge of the Contents of Documents that they Signed in Blank**

Further, in North Carolina, "one who signs a paper writing is under a duty to ascertain its contents, and in the absence of a showing that he was willfully misled or misinformed by the defendant as to these contents, or that they were kept from him in fraudulent opposition to his request, he is held to have signed with full knowledge and assent as to what is therein contained." *Williams v. Williams*, 220 N.C. 806, 809-10, 18 S.E.2d 364, 366 (1942) (*citing Dellinger v. Gillespie*, 118 N.C. 737, 24 S.E. 538 (1896)); *Griffin v. Lumber Co.*, 140 N.C. 514, 519, 53 S.E. 307, 309 (1906); *Colt v. Kimball*, 190 N.C. 169, 129 S.E. 406 (1925); *Furst v. Merritt*, 190 N.C. 397, 402, 130 S.E. 40, 43 (1925); *Breece v. Oil Co.*, 211 N.C. 211, 189 S.E. 498 (1937)).

---

[6] In *Grubb*, the North Carolina Court of Appeals held that the plaintiff "should have discovered that the deed for the property did not include an adjacent tract of land" when "preparing and filing a legal document describing property it had recently purchased." *Grubb*, 101 N.C. App. at 501-02, 400 S.E.2d at 88.

Consistent with these general rules, in analyzing and dismissing claims based upon allegations that defendant lenders falsified loan application income figures, federal courts have stated: "a loan application is a request by the borrower for a loan; it does not contain any representations by the lender." *Infante v. Bank of Amer. Corp.*, 680 F.Supp.2d 1298, 1303–04 (S.D.Fla.2009). "To the contrary, the statements contained in a [loan application] are the applicant's 'own statement[s] regarding his income' and are certified by the applicant when he signs the loan application, to be 'true and correct,' regardless of who assists the applicant in preparing the application." *Id., see also, Dixon v. Countrywide Home Loans, Inc*., 710 F. Supp. 2d 1325, 1332 (S.D. Fla. 2010) and *Martinez v. Res. Bank, FSB*, 1:09CV1112 (JCC), 2009 WL 4665767 (E.D. Va. Nov. 30, 2009) (dismissing claims based on alleged inflation of income in a loan application and stating, "even if the Court were to assume that Plaintiff was somehow misled by these Defendants, it appears that a diligent person could have easily discovered the terms of his Loans during the settlement closing or anytime thereafter.")

In *Dixon*, as here, the plaintiff argued that he did not know that his loan application contained false statements since he apparently did not review the application until sometime after receiving the loan. However, the plaintiff's alleged failure to review the loan application was "not cause to avoid his obligations thereunder," because a "party to a writing cannot deny its contents on the ground

that he signed it without reading it, unless he avers facts showing circumstances which prevented his reading it or that he was induced by statements of other parties to desist from reading it." *Id.* The court also noted that an admission that the plaintiff did not know the income figures were falsified in the loan application "further undermine[d] Plaintiff's fraud-based claims as this negates Plaintiff's ability to allege the remaining elements—inducement, reliance or damages." *Id.*

Moreover, the court concluded, "Plaintiff cannot argue that he was damaged as a result of the purported false statements in the [application], as Plaintiff went to the bank for a loan and came out with a loan. Plaintiff cannot now contend that he was injured by receiving the very thing that he requested." *Id.* (citations omitted). *See also, Matthys v. Mortgage Elec. Registration Sys., Inc.*, 609-CV1150-ORL-31DAB, 2009 WL 3762632 (M.D. Fla. Nov. 10, 2009) ("Even after setting aside the problem that the 'harm' caused by the alleged fraud was borrowers receiving exactly what they desired, this count still fails to state a claim.")

## C. The District Court Properly Concluded the Statutes of Limitations Began Running When the Loans Closed in 2004

As the District Court concluded, Borrowers are "held to have signed with full knowledge and assent as to what is therein contained" in their loan applications. *Williams*, 220 N.C. at 809-10, 18 S.E.2d at 366. Borrowers should have known of the allegedly fraudulent statements in their loan application when they executed the closing documents. Thus, the statutes of limitations for the

breach of duty of good faith and fair dealing, fraud, and Chapter 75 claims bar Borrowers' claims in this action, since this action was not filed until November 2, 2012, almost eight years after the time of the closing on November 29, 2004. (JA pp. 14, 16; Cmplt ¶ 21).

## II.    The District Court Properly Determined that, Alternatively, Borrowers' Claims are Subject to Dismissal on the Merits Because they Fail to Sate Any Claim for Relief as a Matter of Law

Though the District Court dismissed Borrowers' claims because they are barred by the statutes of limitations, out of an abundance of caution, it also determined that, if brought timely, they would be subject to dismissal on the merits. [7]

### A.    The Onus was on Borrowers to Exercise Due Diligence in Evaluating the Financial Propriety of their Loan and, absent a Special Relationship, They Could Not Shift that Duty to Wells Fargo.

Borrowers' claims presuppose Wells Fargo breached a duty to them by approving their loan application in reliance on inflated income figures. (JA pp. 15-17; Cmplt ¶¶ 15, 19, 22). Borrowers argue "the issue essentially boils down to whether or not it is reasonable" for a borrower to solely rely on the banker to evaluate the borrower's financial records to determine how much loan the

---

[7] (JA p. 198; Order Granting Mtn to Dismiss p. 14) ("Even though the Court has already determined that the Plaintiffs' claims are barred by the statute of limitations, out of an abundance of caution the Court also addresses whether these claims are subject to dismissal on the merits.").

borrower can afford. (Appellants' Brief p. 33). They contend that they had no duty to evaluate the suitability of their investment for themselves, arguing that a borrower should be able to simply "tender[] their application materials [which they signed in blank], pa[y] a loan origination fee, and then wait[] for closing time to come around." (Appellants' Brief p. 33).

1.  The Parties Lender-Mortgagor Relationship Did Not Impose Upon Wells Fargo any Duty to Evaluate the Suitability of the Loans for Borrowers.

As a matter of law, a <u>lender owes no duty to a borrower to evaluate the financial propriety of a loan, or to ensure that a borrower can afford the payments</u>. Instead, <u>the onus is on a borrower to exercise due diligence in evaluating the loan</u>. *Wells Fargo v. VanDorn*, 2012 NCBC 6 ¶ 21 (N.C. Super. Ct. 2012) (There is "no basis to impose on the lender the duty to assess the investment risk [Plaintiffs] elected to undertake in purchasing [property]"; *see also, Nixon v. Alan Vester Auto Group, Inc.*, No. 1:07-cv-839, 2008 U.S. Dist. LEXIS 79294, at *18 (M.D.N.C. Oct. 8, 2008) ("Plaintiff is attempting to foist her own responsibility for making an unwise decision on [her lender]. This cannot be the basis for liability in a rational system of law.").

In fact, under North Carolina law, in the absence of unique circumstances giving rise to a fiduciary duty,[8] "[a] lender is only obligated to perform those duties expressly provided for in the loan agreement to which it is a party." *Lassiter v. Bank of North Carolina*, 146 N.C. App. 264, 268, 551 S.E.2d 920, 922 (2001); *see also, Camp v. Leonard,* 133 N.C. App. 554, 560, 515 S.E.2d 909, 913 (1999) and *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 61, 418 S.E.2d 694, 699 (1992). And it is "uncommon" to recognize a fiduciary relationship between a lender and a borrower in North Carolina. *Dallaire v. Bank of America, N.A.*, 738 S.E.2d 731, 735 (N.C. Ct. App. 2012), rev. allowed, 747 S.E.2d 535 (N.C. 2013) (*citing Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 60-61, 418 S.E.2d 694, 699 (1992).; *see also Angell v. Kelly,* 336 F. Supp. 2d 540, 550–51 (M.D.N.C. 2004) ("North Carolina courts are reluctant to impose extra-contractual fiduciary obligations even though parties to an arms-length transaction may have placed confidence in one another. It is also well-settled that a debtor-creditor relationship does not give rise to a fiduciary duty.") (citations omitted).

---

[8] A fiduciary relationship is "one in which there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence . . . in which there is confidence reposed on one side, and resulting domination and influence on the other." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001). Here, the Appellants alleged that they "moved forward" based on "all assurances from Prosperity and Wells Fargo Bank," (JA p. 15; Cmplt ¶ 9), but failed to allege sufficient facts to plausibly support the existence of an agency relationship between Prosperity and the Bank or between the Appellants and the Bank.

Borrowers cannot identify <u>any</u> case supporting their argument that lenders must, in essence, act as financial advisors or fiduciaries to determine whether a loan is a good deal for the benefit of their potential borrowers.[9] Moreover, Borrowers make only conclusory allegations regarding Wells Fargo's duties, with no factual reference to any duties imposed by the loan agreement itself or to any fiduciary relationship existing between the parties. Borrowers merely allege with respect to their fraud claim that Wells Fargo had a "duty to tell the truth" (JA p. 16; Cmplt ¶ 19), and with respect to their Chapter 75 claim that Wells Fargo "acted unfairly" as it placed the Plaintiffs in a loan for which they did not qualify (JA p. 16; Cmplt ¶ 22(a)).

> 2.    The Implied Duty of Good Faith and Fair Dealing Did Not Impose Upon Wells Fargo a Duty to Evaluate the Suitability of the Loans for Borrowers.

Ignoring the well-established law discussed above defining duties in a lender-mortgagor relationship, Borrowers argue that Wells Fargo owed them duties to evaluate the suitability of their loans by virtue of the "general obligation of honesty and fair play" imposed by the Uniform Commercial Code and the Unfair

---

[9] The *Gant* case Mortgagors cite is inapposite, as it states only that "in some instances a creditor owes a **duty to the guarantor** to disclose information about the principal debtor." *Gant v. NCNB Nat'l Bank of N.C.*, 94 N.C. App. 198,199-200, 379 S.E.2d 865, 868, disc. rev. denied, 325 N.C. 706, 388 S.E.2d 453 (1989). As the District Court noted, *Gant* does <u>not</u> stand for the proposition that a lender is obligated to disclose information regarding the borrower's own financial situation to the borrower or to advise the borrower of his ability to repay the loan. The Appellants' reliance on *Gant*, therefore, is misplaced.

or Deceptive Trade Practices Act. (Appellants' Brief pp. 28-29). They contend these statutory provisions impose upon Wells Fargo an "implied duty of good faith and fair dealing." (Appellants' Brief pp. 28-29).

Here, Borrowers argue Wells Fargo breached its duty of good faith and fair dealing during the loan application and approval process (JA p. 16; Cmplt ¶ 16). Thus, the alleged breach took place before any contractual agreement between Borrowers and Wells Fargo came into existence.

As the District Court noted, conduct which occurred before the formation of a contract cannot support a claim for breach of the duty of good faith and fair dealing, as that claim does not exist in North Carolina absent a cause of action for breach of contract. *See Shalford v. Shelley's Jewelry, Inc.*, 127 F. Supp. 2d 779, 787 (W.D.N.C. 2000) (citing *Polygenex Int'l, Inc. v. Polyzen, Inc.,* 133 N.C. App. 245, 251, 515 S.E.2d 457, 461-62 (1999) ("affirming lower court's sanction against plaintiff for filing claim for breach of covenant of good faith because absent a breach of the contract, there is no cause of action for breach of an implied covenant of good faith").[10] In North Carolina, "the implied duty of good faith and fair dealing only arises where a party to a contract performs its contractual obligations in bad faith . . ." *See Suntrust Mortg., Inc. v. Busby*, 651 F. Supp. 2d 472, 486-87

---

[10] An independent claim for breach of this duty has only been recognized with the existence of a special relationship not implicated in this case, *i.e.,* contracts for funeral services and insurance. *Meineke Car Care Centers, Inc. v. RLB Holdings, Inc.*, 2009 WL 2461953 *11 (W.D.N.C. Aug. 10, 2009) (unpublished).

(W.D.N.C. 2009) (*citing Weyerhaeuser Co. v. Godwin Bldg. Supply Co., Inc.*, 40 N.C. App. 743, 746, 253 S.E.2d 625, 627-28 (1979)).

Although it is not mandatory for a party to allege a breach of contract in order to succeed on a claim for a breach of the duty of good faith and fair dealing, *Robinson v. Deutsche Bank Nat'l Trust Co.*, No. 5:12-CV-590-F, 2013 WL 1452933, *11 (E.D.N.C. April 9, 2013) (*citing Richardson v. Bank of America, N.A.*, 182 N.C. App. 531, 556, 643 S.E.2d 410, 426 (2007)), it is necessary for the party to be "a party or a beneficiary to a valid contract in order to assert [such] a claim . . ." *Id.*, 2013 WL 1452933 at *11. Because Borrowers have failed to identify any breach of contract, or any contract in existence between themselves and Wells Fargo at the time of the alleged breach of the duty of good faith and fair dealing, their claims based upon those allegations fail. *Id.* at *11; *Ada Liss Group v. Sara Lee Corp.*, 2010 WL 3910433 *14 (M.D.N.C. April 27, 2010) (unpublished).

**B.      Borrowers Fail to Allege Facts Sufficient to State Claims for Fraud or Unfair Trade Practices.**

To state a claim for fraud, or an Unfair Trade Practices claim based upon alleged fraud, Borrowers must allege that:

1.  Wells Fargo made a representation relating to some material past or existing fact;

2.  The representation was false;

3. When it made it, Wells Fargo knew the representation was false, or made it recklessly, without any knowledge of its truth and as a positive assertion;

4. Wells Fargo made the representation with intention that it should be acted upon by Borrowers;

5. Borrowers reasonably relied upon the representation and acted upon it; and

6. Borrowers thereby suffered injury.

*In re Baby Boy Shamp*, 82 N.C. App. 606, 612, 347 S.E.2d 848, 852 (1986).

Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[T]he general rule that pleadings are to be given liberal construction does not apply to claims of fraud." *Ahmed v. Porter*, No. 1:09-cv-101, 2009 WL 2581615, at *8 (W.D.N.C. June 23, 2009) (unpublished). In construing Rule 9(b), this Court requires that a plaintiff plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999); *Liner v. DiCresce*, 905 F. Supp. 280, 287 (M.D.N.C. 1994); *Riley v. Murdock*, 828 F. Supp. 1215, 1225 (E.D.N.C. 1993) (emphasis added).

>    *1      The Amended Complaint Fails to Satisfy the Particularity*
>            *Required Under Rule 9(b).*

In support of their Fraud and Unfair Trade Practices Claims, Borrowers assert that "Prosperity's agent asked Plaintiffs to sign various documents in blank format so that they could later be completed by Prosperity's agent and then submitted for the benefit of the Bank." (JA p. 15; Cmplt ¶ 8). They contend "various loan application documents" were "fraudulently and illegally filled out" by "the agents of Defendant." (JA p. 15; Cmplt ¶ 14). Borrowers allege "Prosperity and Wells Fargo produced false income numbers upon which it loaned money to Plaintiffs," but fail to allege who, where, and when specifics of the alleged act. (JA p. 16; Cmplt ¶ 19).

The allegation that Borrowers "met with a mortgage broker by the name of JV WFHM Prosperity Mortgage"[11] does not save the claim because "[i]t is not sufficient to conclusorily allege that a corporation made fraudulent misrepresentations; the pleader in such a situation must allege specifically the individuals who made the misrepresentations of material fact, the time the alleged misstatements were made, and the place or occasion at which they were made." *Coley v. N. Carolina Nat. Bank*, 41 N.C. App. 121, 125-26, 254 S.E.2d 217, 220 (1979) (dismissing claims failing to identify the individual person making the alleged misrepresentations and stating "It would be manifestly unfair to require a

---

[11] (JA p. 144; Brief in Opp. to Mtn to Dismiss p. 10).

corporation to attempt to defend an action for fraud without being informed as to which of its officers, agents, or employees purportedly made the misrepresentations, as well as to all of the facts and circumstances surrounding the transaction.").[12] Without these specifics Borrowers' fraud and unfair trade practices claims fail to meet the heightened pleading requirements of Rule 9(b) and thus fail to put Wells Fargo on notice of the particular circumstances for which it will have to prepare for a defense at trial.

### 2 The Amended Complaint Fails to Allege Any Misrepresentation Made to Borrowers by Wells Fargo

Borrowers' inability to meet the heightened pleading standard highlights one of the fundamental fatal deficiencies in their Amended Complaint: they cannot identify any misrepresentation of fact made by Wells Fargo to them. Borrowers allege agents of Prosperity misrepresented Borrowers' income level to Wells Fargo – that Wells Fargo was the recipient, and not the maker, of the alleged fraudulent income information. (JA p. 15; Cmplt ¶ 8).

---

[12] Under the Rule 9(b) heightened pleading standard, "the Court will not dismiss an adequate fraud claim because Plaintiff did not name the agent that signed the document." *Metro Group, Inc. v. Meridian Indus.*, No. 3:09-CV-440, 2010 WL 5056771 *4 (W.D.N.C. Dec. 6, 2010) (*citing Food Lion, LLC v. Schuster Mktg. Corp.*, 382 F. Supp. 2d 793, 798 (E.D.N.C. 2005)). This case is distinguishable, however, because it fails to establish that Prosperity's agent was the Bank's agent, and it also fails to establish the time and place of the alleged misrepresentations. (JA pp. 144-145; Brief in Opp. to Mtn to Dismiss pp. 10-11).

### i.     Borrowers' Failed to Plead Facts from which the Court Can Infer that Prosperity is Wells Fargo's Agent

Without alleging any supporting facts, Borrowers conclude Wells Fargo is vicariously liable for the alleged misrepresentations of Prosperity. (JA p. 14; Cmplt ¶ 6). However, to sustain a claim for fraud based on an agency theory, Borrowers must plead facts from which the Court can infer that Prosperity was, in fact, acting as Wells Fargo's agent. *See, Meisel v. Grunberg*, 651 F. Supp. 2d 98, 121 (S.D.N.Y. 2009) (A party must plead "facts from which the Court can infer that [the alleged principal] controlled [the alleged agent's] purportedly fraudulent actions in connection with" the event); *see also*, *Bauer v. Douglas Aquatics, Inc.*, 207 N.C. App. 65, 74, 698 S.E.2d 757, 764 (2010) (noting that "[a]n agency relationship 'arises when parties manifest consent that one shall act on behalf of the other and subject to his control'" and "in establishing the existence of an actual agency relationship, the evidence must show that a principal actually consents to an agent acting on its behalf"). "The unsupported statement that [the agent] acted as an agent on behalf of [the principal] is insufficient to allege an agency relationship encompassing the authority to make allegedly fraudulent statements." *Meisel*, 651 F. Supp. At 121; *Karamath v. U.S. Bank, N.A.*, 2012 U.S. Dist. LEXIS 135038 at *15 (E.D.N.Y. Aug. 29, 2012) (same) (citations omitted). Borrowers fail

to allege any such facts from which this Court could impute Prosperity's actions to Wells Fargo.

In their Brief, Borrowers argue that the following allegations adequately allege an agency relationship between Prosperity and Wells Fargo:

- "Prosperity was at all times relevant herein an acting agent for the defendant, Wells Fargo Bank and procured numerous loans on behalf of Wells Fargo Bank in the Buncombe County area." (Appellants' Brief p. 26);

- Borrowers' loan application process was facilitated by Prosperity "for the benefit of Wells Fargo Bank." (Appellants' Brief p. 26); and

- Prosperity "ushered the Plaintiffs through the entire loan process." (Appellants' Brief p. 27).

These conclusory allegations, however, provide no factual basis from which the Court could infer that Prosperity was acting as Wells Fargo's agent. Rather, as the District Court noted, Borrowers "claim that Prosperity was an agent for the Bank, without providing factual allegations to determine such a relationship." (JA p. 204; Order Granting Mtn to Dismiss p. 20). Accordingly, the alleged inflated income figures Borrowers contend Prosperity inserted into their loan application cannot serve as the basis for a fraud claim against Wells Fargo.

### ii.    The Statements Allegedly Made by Wells Fargo are Not Misrepresentations

The only alleged misrepresentation that could be attributed to Wells Fargo is that Borrowers were entering into "an acceptable and good loan." (JA p. 15; Cmplt ¶ 10).

For an alleged representation to be actionable at law, it must be predicated upon misstatements of existing fact rather than upon an expression of opinion, an expression of intention or an expression of confidence that a loan would be "acceptable and good." *See, Carpenter v. Merrill Lynch Realty Operating Partnership, L.P.*, 108 N.C. App. 555, 558-59, 424 S.E.2d 178, 179-80 (N.C. App. 1993) ("a general unspecific statement of opinion about [a] future probability," "outcome" or "consequence" is not an actionable misrepresentation). As a matter of law, the only alleged "misrepresentation" Wells Fargo made to Borrowers is not actionable because it is merely a forward looking statement of opinion about future events, and not a misrepresentation of past or present fact.

### iii.   Borrowers' could not reasonably rely on the alleged misrepresentations.

Reliance is not justified, as required to support a fraud claim, if the plaintiff has an alternative source for the allegedly concealed or misrepresented information. *Sullivan v. Mebane Packaging Group, Inc.*, 158 N.C. App. 19, 27-28, 33-34, 581 S.E.2d 452, 458-59, 462-63. Consistent with this general rule, a party

may not reasonably or justifiably rely upon a misrepresentation if it could have discovered the truth by a reasonably adequate inquiry, including by reading a contract. *Sullivan*, 158 N.C. App. 19, 27, 28, 33-34, 581 S.E.2d 452, 458-59, 462-63 (2003).

Borrowers allege Wells Fargo committed fraud when Prosperity misrepresented their income on various documents associated with the Loans and Wells Fargo made loans to Borrowers based upon those misrepresented amounts. (JA p. 16; Cmplt ¶ 19). Notwithstanding the implausibility of this assertion, Borrowers knew their income and should have known what payments they could afford such that they could not have relied on any misrepresentations to the contrary. Additionally, Borrowers had the opportunity and obligation to review their loan application and final loan documentation prior to signing them. Borrowers may not now claim that they were "totally oblivious to the consequences" of entering into the loan with Wells Fargo to escape the obligations they freely entered, which were plainly stated on the face of the documents.

This case is analogous to *Karamath v. United States Bank*, No. 11-CV1557 (NGG)(RML), 2012 WL 4327613 *5 (E.D.N.Y. Aug. 29, 2012), in which the court opined that since the complaining party was "in the best position to know her own income and expenses, she could not reasonably have relied on any misrepresentations about her ability to make payments" and thus her fraud claim

was dismissed since she could not reasonably have relied on the lender's alleged misstatement of her own income. *See also Hayrioglu v. Granite Capital Funding, LLC*, 794 F. Supp. 2d 405 (E.D.N.Y. 2011).

"As other courts have noted in similar cases, if plaintiffs were not aware of the use of an inflated income to qualify them for the loan, then they could not possibly have relied on that misrepresentation . . . Certainly, plaintiffs cannot be suggesting that they believed they made more money because it said so on the loan application." *Zimmerman v. Logemann*, No. 09-CV-210, 2011 WL 1674956 *15 (W.D. Wis. Mar. 17, 2011). *See also Newsom v. Countrywide Home Loans, Inc.*, 714 F. Supp. 2d 1000, 1014 (N.D. Cal. 2010) and *Oglesbee v. IndyMac Fin. Services, Inc.*, 686 F. Supp. 2d 1313, 1316 (S.D. Fla. 2010) (both dismissing fraud claims since the inflated incomes on the plaintiffs' loan applications were made to the lenders rather than to the plaintiffs).

Further, Borrowers could not have reasonably relied on the suggestion that the loans were "acceptable and good" since they would have discovered the incorrect income amounts in their loan applications if they had employed reasonable diligence. In the present case, Borrowers were able to maintain their loan payments until a future unforeseen event years after the closing, "during the real estate collapse and the economic collapse which began in 2007 and continues to this day." (JA p. 15; Cmplt ¶ 12). Borrowers failed to allege facts showing their

detrimental reliance on any representations by the Bank. Therefore, it is clear on the face of the Amended Complaint that Borrowers' reliance on Wells Fargo's alleged statements was not reasonable or justifiable.

### iv.    Borrowers Admit their Alleged Harm was Caused by the Economic Downturn

Borrowers' own allegations belie their contentions that they were damaged by Wells Fargo's purported use of inflated income figures in the underwriting process. Specifically, Borrowers' admit they were able to make the Loan payments from 2004 until the "real estate collapse and the economic collapse which began in 2007 and continues to this day." (JA p. 15; Cmplt ¶ 12). Accordingly, Borrowers have failed to allege that the alleged misrepresentations of Wells Fargo caused them any harm.

## CONCLUSION

For the reasons stated above, Wells Fargo respectfully requests that the Court affirm the District Court's March 21, 2014, Order dismissing this lawsuit.

## REQUEST TO DISPENSE WITH ORAL ARGUMENT

Wells Fargo respectfully requests that the Court dispense with oral argument in this case, as the facts and legal arguments have been adequately presented in the briefs and the decisional process would not be significantly aided by oral argument.

**WOMBLE CARLYLE SANDRIDGE & RICE, LLP**

/s/ Lee D. Williams

Kenneth B. Oettinger, Jr. (NC State Bar No. 20064)
B. Chad Ewing (NC State Bar No. 27811)
Lee Davis Williams (NC State Bar No. 35657)
301 South College Street, Suite 3500
Charlotte, NC 28202-6037
Telephone: (704) 331-4900

*Attorneys for Defendant*

<u>**UNITED STATES COURT OF APPEALS**</u>
<u>**FOR THE FOURTH CIRCUIT**</u>

<u>**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**</u>
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

     this brief contains <u>8,090</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

     this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

                                   <u>/s/ Lee Davis Williams</u>
                                   Lee Davis Williams

                                   *Counsel for Appellee*


Dated:  July 30, 2014

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on July 30, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

David Ray Payne
DAVID R. PAYNE, PA
1 North Pack Square, Suite 300
Asheville, NC 28801-0000
(828) 258-0076

*Counsel for Appellant*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/  Karen R. Taylor
Karen R. Taylor
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street
Suite 230
Richmond, VA  23219